UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AHMIR COLE,

                                    Petitioner,                    **Hon. Hugh B. Scott**

                                                                   **11CV912HBS**

                         v.                                        **CONSENT**

                                                                   **Decision
                                                                   &
CHAPPIUS, Superintendent,                                          Order**

                                    Respondent.


        Petitioner Ahmir Cole has filed an application to this Court for habeas corpus relief

pursuant to 28 U.S.C. § 2254 challenging his state court convictions.  He asserts the following

grounds in support of his Petition: severance and joinder of offenses, insufficient evidence of

first degree murder, ineffective assistance of counsel, and other claims (Docket No. 34, Am.

Pet.).  The parties consented to proceed before the undersigned as Magistrate Judge (pursuant to

28 U.S.C. § 636(c)) (Docket No. 12, March 15, 2012).

                                    **BACKGROUND**

*Offense and State Court Proceedings*

        This habeas Petition arises from petitioner's conviction in two trials from the shooting of

Salah Ahmed in April 5, 2006, at his Kenmore, New York, store; the murder of George

Pitliangus at Tony's Ranch House Restaurant on April 14, 2006; an incident with Anthony

Dawson, on May 7, 2006, at the Groove Night Club; and criminal possession of contraband

found during a traffic stop on May 29, 2006 (Docket No. 1, Pet.; see Docket No. 34, Am. Pet.).

Petitioner was convicted of murder in the first degree; attempted robbery in the first degree; robbery in the first degree; criminal possession of a weapon in the second degree; attempted murder in the second degree; assault in the second degree; assault in the first degree; criminal possession of controlled substance in third degree; attempted murder in the first degree; and murder in the second degree.

Petitioner was indicted in a twenty-one count Indictment, N.Y. Erie County Ct., No. 00952-2006. Upon petitioner's motion, these counts were tried in separate trials (Docket No. 11, Resp't Br. at 1-2). Counts 1-6 arise from the shooting of Ahmed, while counts 7-12 arise from the murder of Pitliangus. Counts 15-18 arise from the Groove Night Club incident with Dawson. The remaining counts are the criminal possession charges.

Below is a table of the charges alleged in these counts.

| Count | Charge and Facts |
|-------|------------------|
| 1 | attempted murder in the first degree, April 5, 2006, with Salah Ahmed at Kenmore store, in violation of N.Y. Penal L. §§ 110.00 (attempt), 125.27(1)(a)(vii) |
| 2 | attempted murder in the second degree, April 5, 2006, in violation of Penal L. §§ 110.00, 125.25(1) |
| 3 | robbery in the first degree, April 6, 2006, with loaded pistol, in violation of Penal L. § 160.15(2) |
| 4 | robbery in the first degree, April 6, 2006, with injury to Ahmed, in violation of Penal L. § 160.15(2) |
| 5 | assault in the first degree, April 6, 2006, in violation of Penal L. § 120.10(1) |
| 6 | criminal possession of weapon in second degree, April 6, 2006, in violation of Penal L. § 265.03(2) |
| 7 | murder in the first degree, April 14, 2006, at Tony's Ranch House, of George Pitliangus, during course of attempted robbery, in violation of Penal L. § 125.27(1)(a)(vii) |

| Count | Charge and Facts |
|-------|------------------|
| 8 | murder in the second degree, April 14, 2006, in violation of Penal L. § 125.25(1) |
| 9 | murder in the second degree, April 14, 2006, while attempting a robbery, in violation of Penal L. § 125.25(3) |
| 10 | attempted robbery in the first degree, April 14, 2006, in violation of Penal L. §§ 110.00, 160.15(2) |
| 11 | murder in the first degree, April 14, 2006, during course of a robbery, in violation of Penal L. § 125.27(1)(a)(vii) |
| 12 | murder in the second degree, April 14, 2006, during course of a robbery, in violation of Penal L. § 125.25(3) |
| 13 | robbery in the first degree, April 14, 2006, in violation of Penal L. § 160.15(2) |
| 14 | criminal possession of weapon second degree, April 14, 2006, in violation of Penal L. § 265.03(2) |
| 15 | attempted murder in the second degree, May 7, 2006, Andrew Dawson, at Groove Night Club, in violation of Penal L. §§ 110.00, 125.25(1) |
| 16 | robbery in the first degree, May 7, 2006, in violation of Penal L. § 160.15(2) |
| 17 | assault in the second degree, May 7, 2006, in violation of Penal L. § 120.05(6) |
| 18 | criminal possession of weapon in the second degree, May 7, 2006, in violation of Penal L. § 265.03(2) |
| 19 | criminal possession of controlled substance in the third degree, May 29, 2006, possessing cocaine, in violation of Penal L. § 220.16(1) |
| 20 | criminal possession of controlled substance in the fifth degree, May 29, 2006, possessing 500 milligrams or more of cocaine, in violation of Penal L. § 220.06(5) |
| 21 | criminal possession of weapon in the third degree, May 29, 2006, in violation of Penal L. § 265.02(4) |

Upon his motion, petitioner was tried in two severed trials (trying counts 7-21 on February 26, 2007, and then counts 3-6 on July 30, 2007, while counts 1-2 were dismissed).

*Tony's Ranch House, April 14, 2006*

During the robbery at Tony's Ranch House, the suspect showed the owner, Pitliangus, a gun which Pitliangus said was a mere toy. Shots then were fired. Travis Cochran, petitioner's friend, testified that petitioner wanted to rob Tony's Ranch House and petitioner had displayed a .22 caliber Ruger pistol. (Docket No. 11, Resp't Br. at 6; Murder Trial Tr. at 542, 547-54, 614-15, 617-28, 630-31.)

*Groove Night Club, May 7, 2006*

On the night of May 7, 2006, Anthony Dawson was leaving the Groove Night Club when petitioner approached him and demanded his gold chain. Dawson refused. Petitioner then fired a shot at Dawson and left with the chain. A shell casing was later found in the night club's door and it matched the shell casing found at Tony's Ranch House. (Docket No. 11, Resp't Br. at 7.)

On May 29, 2006, petitioner was stopped while driving his girlfriend, Tamika Hunter's, car and drugs and a gun were recovered from the car. The recovered gun had a partial DNA profile of petitioner on it. (Id. at 8-9.)

*Salah Ahmed, April 5, 2006*

On April 5, 2006, Ahmed was a cashier at a Kenmore corner store. After 10 pm, a masked man entered the store and ordered Ahmed to open the cash register at gun point. Cochran later testified that he wanted to rob this store and petitioner served as look out as the robbery occurred. Petitioner later admitted to his girlfriend, Hunter, that he and Cochran robbed the Kenmore store. (Id.)

4

*Trials*

After petitioner moved to sever the Tony's Ranch House and Groove Night Club incidents from the Ahmed robbery, and the dismissal of two counts, he was convicted in both trials of most of the remaining nineteen counts[1].  He was sentenced to life in prison for the murder conviction with concurrent 25-year, 15-year, 7-year, and 1-year sentences for the other offenses.

*Appeal*

Petitioner appealed to the New York State Supreme Court, Appellate Division, arguing that evidence is legally insufficient; that the verdict was against the weight of evidence; objecting that joinder of offenses (the Tony's Ranch House murder and the Groove Night Club robbery) in the first trial was improper; that he was denied his statutory right to testify before the Grand Jury; improper amendment of the Indictment; police misconduct; and ineffective assistance of trial counsel.  The Appellate Division affirmed his conviction, People v. Cole, 68 A.D.3d 1763, 892 N.Y.S.2d 694 (4th Dep't 2009), and leave to appeal was denied, People v. Cole, 14 N.Y.3d 839, 901 N.Y.S.2d 145 (2010).  The Appellate Division rejected petitioner's contention that the verdict was against the weight of evidence for two counts of murder at Tony's Ranch House and the attempted murder charge at the Groove Night Club, 68 A.D.3d at 1763, 892 N.Y.S.2d at 695. That court upheld the denial of severance of the drug possession count from the weapons possession count since both the drugs and the weapon were possessed at the time of petitioner's arrest on May 29, 2006, 68 A.D.3d at 1763, 892 N.Y.2d at 695.  Since the weapon seized on May

---

[1]Plaintiff was acquitted of criminal possession of controlled substance in the third degree and three counts of murder in the second degree from the Tony's Ranch House incident were not considered by the jury.  State Court Record, County Court Minutes.

29, 2006, was also used at Tony's Ranch House and the Groove Night Club, the Appellate

Division upheld the "chain of joinder" of the robbery, murder and attempted murder counts, id.

The Appellate Division also held that admission by petitioner to his girlfriend Hunter concerning

his involvement in the Kenmore store crimes corroborated the testimony of an accomplice, id.

The court found that petitioner did not preserve for review the sufficiency of evidence for the

first degree murder counts as to petitioner's age when the offense was committed because he

failed to move at trial for an Order of dismissal, 68 A.D.3d at 1763, 892 N.Y.S.2d at 695-96.

Petitioner was represented by counsel and also appeared pro se on this appeal.

Petitioner meanwhile filed a post-conviction motion under New York Criminal Procedure

Law §§ 330.30, 440.20, 440.10(F), (H), which was denied on September 18, 2008, and writ of

coram nobis was denied on July 1, 2011.  Leave to appeal was denied on September 28, 2011,

and the writ of coram nobis to the Appellate Division was denied on April 20, 2012.  Petitioner's

additional coram nobis writs also were denied.  (See Docket No. 38, Resp't Memo. at 3-4.)

*Habeas Petition*

Petitioner then filed this Petition on October 27, 2011 (Docket No. 1), and he amended

the Petition on June 12, 2013 (Docket No. 34).  Respondent filed an Answer with an attached

record from the state court proceedings (Docket No. 10), and then a response to the Amended

Petition (Docket No. 37).

## DISCUSSION

I.      Exhaustion

In the interest of comity and in keeping with the requirements of 28 U.S.C. § 2254(b),

federal courts will not consider a constitutional challenge that has not first been "fairly

presented" to the state courts.  See Ayala v. Speckard, 89 F.3d 91, 94 (2d Cir. 1996), citing

Picard v. Connor, 404 U.S. 270, 275 (1971); Daye v. Attorney General of New York, 696 F.2d

186, 191 (2d Cir. 1982) (in banc), cert. denied, 464 U.S. 1048 (1984).  A state prisoner seeking

federal habeas corpus review of his conviction must first exhaust his available state remedies

with respect to the issues raised in the federal habeas petition.  Rose v. Lundy, 455 U.S. 509

(1982).  However, under 28 U.S.C. § 2254(b)(2), where appropriate the Court may deny the

relief requested in the petition upon a review of the merits notwithstanding the failure of the

applicant to exhaust state court remedies.

Based on the record before the Court, it appears that the petitioner has exhausted his state

court remedies.  In any event, review of the claims asserted in the Petition is appropriate under

§ 2254(b)(2).

II.     Standard of Review

State court findings of "historical" facts, and inferences drawn from those facts, are

entitled to a presumption of correctness. Matusiak v. Kelly, 786 F.2d 536, 543 (2d Cir.), cert.

denied, 479 U.S. 805 (1986). (See also 28 U.S.C. § 2254(e)(1), which states that "a

determination of a factual issue made by a State court shall be presumed to be correct.")

As amended by the Antiterrorism and Effective Death Penalty Act of 1996[2] ("AEDPA"),

28 U.S.C. § 2254(d) provides that a habeas corpus petition may not be granted with respect to

any claim that was adjudicated on the merits in state court unless the state court's adjudication of

that claim:

---

[2]Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat.
1214.

7

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The habeas corpus petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. The presumption of correctness attaches to findings both by state trial courts and by state appellate courts. Smith v. Sullivan, 1 F. Supp. 2d 206, 210-11 (W.D.N.Y. 1998) (Larimer, Ch.J.); Nevius v. Sumner, 852 F.2d 463, 469 (9th Cir. 1988), cert. denied, 490 U.S. 1059 (1989). As noted by then-Chief Judge Larimer in Smith, "the new version of § 2254(d) has clearly raised the bar for habeas petitioners, placing on them the burden to show by clear and convincing evidence that the state court's decision was defective in some way." Smith, supra, 1 F. Supp. 2d at 211.

Prior to the enactment of the AEDPA, § 2254(d) provided that a state court "determination after a hearing on the merits of a factual issue . . . shall be presumed to be correct," unless certain specified exceptions existed. When it enacted AEDPA, Congress changed the language dealing with the presumption of correctness of state court findings of fact and moved it to § 2254(e), and also added the current version of § 2254(d). The amended statute "requires federal courts 'to give greater deference to the determinations made by state courts than they were required to do under the previous law.'" Ford v. Ahitow, 104 F.3d 926, 936 (7th Cir.1997) (quoting Emerson v. Gramley, 91 F.3d 898, 900 (7th Cir. 1996), cert. denied, 520 U.S. 1122 (1997)); see also Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir.1997) ("AEDPA

8

increases the deference to be paid by the federal courts to the state court's factual findings and legal conclusion").

Initially, it should be noted that the petitioner has failed to preserve these arguments for habeas corpus review.  Federal habeas review is barred when a state court expressly relied on a procedural default as an independent and adequate state ground.  See Harris v. Reed, 489 U.S. 255 (1989); Wainwright v. Sykes, 433 U.S. 72 (1977).  "A federal court is generally precluded from reviewing any claim included within the habeas petition for which a 'state court rests its judgment on an adequate and independent state ground, including a state procedural bar.'" Bacchi v. Senkowski, 884 F. Supp. 724, 730 (E.D.N.Y.1995) (quoting Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir. 1992) (per curiam)).  A state procedural bar arises through a failure to make a timely appeal, or through a failure to preserve a claim of appeal through contemporaneous objection.  Reid, supra, 961 F.2d at 377.  Failure to comply with a state's contemporaneous objection rule bars subsequent federal habeas corpus review unless petitioner is able to demonstrate both cause for the procedural default and actual prejudice attributable thereto.  Wainwright, supra, 433 U.S. at 81-91 (1977); Washington v. LeFerve, 637 F. Supp. 1175, 1177 (E.D.N.Y.1986).  "In order to demonstrate cause for his procedural fault, petitioner would have to show that 'some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'"  Washington, supra, 637 F. Supp. at 1177 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  These principles have been applied even where a defendant represents himself at trial.  Reed v. Farley, 512 U.S. 339 (1994); Wells v. LeFavre, 1996 WL 692003 (S.D.N.Y. 1996).

III.    Petitioner's Contentions

A.    Severance and Joinder of Offenses

First, petitioner objects to the offenses alleged against him in this prosecution.  In particular, he objects to trying together his Tony's Ranch House murder with the Groove Night Club robbery.  He intended to testify in the trial of the robbery but could not do that without jeopardizing his self-incrimination rights when tried together with the Tony's Ranch House murder.  (Docket No. 34, Am. Pet. at 80.)

Respondent argues that the denial of petitioner's severance motion did not render the trial fundamentally unfair (Docket No. 11, Resp't Br. at 15-16; Docket No. 38, Resp't Supp'al Br. at 10-11).  Respondent contends that joinder of counts typically does not present a federal constitutional question, but petitioner needs to show actual prejudice, Herring v. Meachum, 11 F.3d 374, 377-78 (2d Cir. 1993); see also Mills v. Lempke, No. 11CV440, 2013 U.S. Dist. LEXIS 14960, at *120-21 (W.D.N.Y. Feb. 4, 2013) (Telesca, J.); Mills v. Poole, No. 06CV842, 2008 U.S. Dist. LEXIS 108461, at *48-49 (W.D.N.Y. May 14, 2008) (Bianchini, Mag. J.), that respondent argues petitioner has not done (id. at 16; Docket No. 38, Resp't Supp'al Br. at 11).  "[S]ubstantial prejudice does not simply mean a better chance of acquittal," United States v. Alvarado, 882 F.2d 645, 655 (2d Cir. 1989); Mills, supra, 2013 U.S. Dist. LEXIS 14960, at *121.

The convenience of trying different crimes against the same defendant in a single trial is a valid governmental interest and thus is justified under the United States Constitution, Spencer v. Texas, 385 U.S. 554, 562 (1967); Mills, supra, 2013 U.S. Dist. LEXIS 14960, at *121.  This convenience counters the "inherent opportunities for unfairness" to a defendant with a joint trial, Scott v. Kelly, No. 98CV811, 1999 U.S. Dist. LEXIS 20688, at *11-12 (W.D.N.Y. Aug. 24,

1999) (Heckman, Mag. J.) (petitioner failed to show that joinder of offenses rendered the trial

unfair, denying habeas on this ground).  One form of prejudice, not present here, is whenever

joinder of counts permits the introduction of evidence of other crimes that would be otherwise

inadmissible, Davis v. Coyle, 475 F.3d 761, 777 (6th Cir. 2007); Coley v. Bagley, 706 F.3d 741,

753 (6th Cir. 2013).

Another form of prejudice is what petitioner alleges here, that he is forced to choose

between testifying as to one set of charges and losing his right against self-incrimination for other

charges.  Severance, which petitioner in effect seeks, "is not required every time a defendant

wishes to testify to one charge but to remain silent on another.  If that were the law, a court

would be divested of all control over the matter of severance and the choice would be entrusted

to the defendant," United States v. Davis, 184 F.3d 643, 646 (7th Cir. 1999) (quoting United

States v. Alexander, 135 F.3d 470, 477 (7th Cir. 1998) (internal quotations and citations

omitted)).  "To obtain severance in such a situation, a defendant must demonstrate that 'he has

important testimony to give on some counts and a strong need to refrain from testifying on those

he wants severed[,]' United States v. Nolan, 700 F.2d 479, 483 (9th Cir. 1983).  A defendant

bears the burden to 'specifically identify the testimony he would offer in his defense so that the

trial court can determine if that testimony is important enough to justify severance.'  Comer [v.

Schriro, 463 F.3d 934, 959 (9th Cir. 2006)]," Arizmendi v. Branzelton, No. C 12-4555 CRB

(PR), 2013 U.S. Dist. LEXIS 164654, at *18-19 (N.D. Cal. Nov. 19, 2013).  One court has held

that this election is never a constitutional violation, Conte v. Cardwell, 475 F.2d 698, 700 (6th

Cir. 1972), cert. denied, 414 U.S. 873 (1973); see Holmes v. Scully, 706 F. Supp. 195, 199 n.5

(E.D.N.Y. 1989).

Here, petitioner has not shown actual prejudice in the trial of the Tony's Ranch House homicide with the Groove robbery.  He only argues that he would have testified in a severed trial of the Groove robbery but was precluded by its joinder with the Tony's Ranch House counts.  He proffers as testimony in the Groove robbery counts that he was accosted outside that night club, engaged in a fight, and wrestled with Dawson, taking the gun from Dawson and the gun discharged, and petitioner still retained that gun days later (Docket No. 34, Am. Pet. at 80).  He does not state the reasons why he did not wish to testify in the Tony's Ranch House counts.  This hampers evaluation of the joinder and denial of severance decisions, see also Holmes, supra, 706 F. Supp. at 199.  Given that the burden is upon petitioner to show actual prejudice in trying these counts together, habeas relief on this ground is **denied**.

B.      Sufficiency of Evidence

Petitioner then challenges the sufficiency of the evidence for the first degree murder conviction for the murder of Pitliangus, arguing that there was insufficient evidence of the defendant's age, petitioner's intent, and corroboration (Docket No. 34, Am. Pet. at 81-83, 84-86, 86-87).  One element for first degree murder under New York law is that the defendant be eighteen years or older when the homicide was committed, N.Y. Penal L. § 125.27(1)(b).

Respondent replies that the procedural bar prevents this Court from reviewing these sufficiency arguments since petitioner never preserved these in state courts (Docket No. 11, Resp't Br. at 10-11).  The procedural bar is an adequate and independent bar to habeas review. (Docket No. 11, Resp't Br. at 10-12; Docket No. 38, Resp't Supp'al Br. at 12-15.)  Respondent argues that the weight of the evidence is not cognizable in federal habeas review (Docket No. 11, Resp't Br. at 12).  Alternatively, respondent concludes that the evidence was legally sufficient

(id. at 12-14), pointing out evidence adduced that would show that petitioner was over 18 years of age at the time of the homicide, including the jury's observation of petitioner, testimony that inferred that petitioner was a licensed driver (id. at 13).

The procedural bar invoked by respondent prevents this Court from reviewing the sufficiency of evidence presented to the elements petitioner now complains of.  Thus, habeas relief on this ground is **denied**.

C.      Ineffective Assistance of Counsel

Petitioner next argues that he obtained ineffective assistance of appellate counsel (Jeremy Schwartz), in that his attorney failed to argue evidentiary variance in proof; weapons possession offenses; sentencing (Docket No. 34, Am. Pet. at 88-92).

Petitioner also argues that his trial counsel was ineffective in making repeated errors–to wit, failing to seek suppression of the trial testimony of girlfriend Tamika Hunter; allowing the suggestive examination of Anthony Dawson and the opinion testimony of Detective Michael Mordino; conducting ineffective cross-examination of Richard Pereira; not requesting an identification charge regarding Dawson's identification of petitioner; insufficient evidence of an element of the assault count regarding Ahmed's injuries; and jury failure to adhere to the circumstantial evidence jury instruction–all that were not raised on appeal by appellate counsel (id. at 93-117).

Respondent argues that petitioner received effective assistance of counsel (Docket No. 11, Resp't Br. at 20-23, 22-23 (appellate), 20-22 (trial); Docket No. 38, Resp't Supp'al Br. 16-20).  Respondent states that appellate counsel was not obliged to claim that trial counsel was ineffective (Docket No. 11, Resp't Br. at 23).  As for trial counsel's failure to present a defense,

respondent argues that trial counsel's performance has to be viewed in the context of the entire trial and, here, trial counsel was effective (id. at 20).

In Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984), the Supreme Court held that a defendant's Sixth Amendment right to counsel is violated if his trial attorney's performance falls below an objective standard of reasonableness and if there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission, see Hinton v. Ala., No. 13-6440, 571 U.S. ___, 2014 WL 684015 (Feb. 24, 2014) (per curiam) (ineffective assistance found where defense counsel did not seek additional funds to retain an expert upon mistaken belief that funds were limited and not available).

### 1.    Appellate Counsel

On the objective prong, petitioner claims that appellate defense counsel failed to raise contentions, some of which petitioner separately raised pro se.  First, he objects to appellate counsel not contesting the variance of proof regarding the Ahmed shooting, since petitioner was alleged to be the principal but proof came in that he was an accessory (Docket No. 34, Am. Pet. at 88-89).  As argued by respondent (Docket No. 11, Resp't Br. at 22-23, 18; Docket No. 38, Resp't Supp'al Br. at 16), under New York law there is no distinction between principal or accessory liability, People v. Duncan, 46 N.Y.2d 74, 79-80, 412 N.Y.S.2d 833, 837 (1978).

Petitioner next faults appellate counsel for not briefing the repeal of the weapons possession count statute, N.Y. Penal L. § 265.02(4), the basis for Count 21 (Docket No. 34, Am. Pet. at 89-91; see also id. at 100-09 (regarding trial counsel and this repeal)).

Petitioner objects to appellate counsel not arguing that lesser included counts were sentenced (Docket No. 34, Am. Pet. at 91-92).

14

Appellate counsel is not obliged to advance a meritless claim, Seda v. Conway, 774 F. Supp. 2d 534, 539 (W.D.N.Y. 2001) (Bianchini, Mag. J.); Valerio v. Phillips, No. 02CV903, 2008 WL 305007, at *18 (W.D.N.Y. 2008) (Bianchini, Mag. J.) (Report & Rec.), adopted, Valerio v. Phillips, No. 09CV903, 2008 U.S. Dist. LEXIS 7702 (W.D.N.Y. Feb. 1, 2008) (Arcara, Ch.J.); Smith v. Robbins, 528 U.S. 259, 288 (2000).  As noted by the Supreme Court, "this process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy," Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)).  These strategic decisions as to which claims to raise on appeal here were not objectively unreasonable.  Therefore, there is no basis for appellate ineffective assistance of counsel.

      2.     Trial Counsel

As for the performance of trial counsel, petitioner contends that he raised before the New York State Court of Appeals that court's recent decision, People v. Nesbitt, 20 N.Y.3d 1080, 965 N.Y.S.2d 743 (2013), for the proposition that defense counsel's failure to present a defense constitutes reversible error and ineffective assistance of counsel (Docket No. 40, Pet'r Letter Nov. 6, 2013).  Here, petitioner argues that his trial counsel conceded his guilt on the weapons possession in the third degree from the pistol found in his girlfriend's car trunk on May 29, 2006 (Docket No. 34, Am. Pet. at 100-09).  In Nesbitt, defense counsel gave no defense for an assault in the first degree and did not request an instruction for a lesser included offense, later arguing to the jury that (while it should find defendant not guilty on another offense) the jury could make its own decision on the assault count, 20 N.Y.3d at 1081, 965 N.Y.S.2d at 744.  The Court of

Appeals held this to be ineffective assistance of counsel <u>as a matter of state law</u>, without citation

to the United States Constitution.

In one of his replies (Docket No. 41), petitioner also objects to respondent citing to

"existing" law for joinder of the counts surrounding the pistol (<u>cf.</u> Docket No. 38, Resp't Supp'al

Br. at 10).  Petitioner argues that the statute respondent relies upon was repealed on November 1,

2006 (Docket No. 41, Pet'r Letter of Nov. 20, 2013, at 1, noting repeal of N.Y. Penal L.

§ 265.02(4)).  Petitioner now argues that he was not properly charged under existing law (<u>id.</u> at 1-

2).  In his Amended Petition, petitioner argues that the conviction on the weapons possession in

the third degree count ties together the temporally disparate events of the Tony's Ranch House

homicide and the Groove Night Club robbery since all three incidents (with the seized firearm on

May 29, 2006) involve the same pistol (Docket No. 34, Am. Pet. at 100).

But these arguments are rolled into petitioner's contention that <u>appellate</u> counsel failed to

raise these issues of trial counsel ineffectiveness on appeal and thus was ineffective.  Petitioner

gives several examples of ineffectiveness of appellate counsel in not failing to raise the

omissions of trial counsel (for example, not seeking suppression of Tamika Hunter's testimony

after she recanted in the face of media reports that may have prejudiced her decision; not

challenging the suggestiveness of the direct examination of Anthony Dawson by the prosecution

that he was robbed; allowing opinion testimony of Detective Mordino regarding whether

petitioner intended to use or distribute the cocaine found on May 29, 2006; ineffectively cross-

examining a witness; and not challenging the insufficient evidence of serious physical injury for

an assault in the first degree count upon Ahmed) (Docket No. 34, Am. Pet. at 93-117).   This

Court will not address trial counsel's underlying effectiveness since the issue for review here is

appellate counsel's failure to raise these issues on appeal.  On the objective prong of <u>Strickland</u>, appellate counsel's performance in not raising every one of these grounds for appeal is reasonable.  As previously noted, appellate counsel's task is to winnow the numerous potential appellate issues down to a few that might prevail.  On the reasonable probability that the result would have differed if these arguments were raised on appeal, the result of this case (either for individual counts or in general) would not change.  Thus, appellate counsel here provided effective assistance of counsel and petitioner's Amended Habeas Petition seeking relief on this ground is **denied**.

    D.  Summary

    For the reasons stated above, the Amended Petition for Habeas Corpus (Docket No. 34; <u>cf.</u> Docket No. 1) is **denied**.

IV.  Certificate of Appealability

    An appeal from a final order in a habeas corpus proceeding involving process issued by a state court requires a certificate of appealability before an appeal can be taken.  28 U.S.C. § 2253(c)(1)(A).  Under that statute "a certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right."  <u>Id.</u> § 2253(c)(2); <u>see</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003).  As discussed above, the claims raised by petitioner here do not make a substantial showing of the denial of a constitutional right. There is an adequate independent state law ground that bars federal habeas review.  Thus, the Court **declines** to issue a certificate of appealability.

**CONCLUSION**

Based on the above, the Amended Petition (Docket No. 34) is **DENIED**.  The Court

**declines** to issue a certificate of appealability.  Pursuant to Fed. R. App. P. 22(b)(1), petitioner

may request a circuit judge of the United States Court of Appeals for the Second Circuit to issue

the certificate.

So Ordered.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
April 7, 2014